UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIONTE DORIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 09-cv-3303 |
| v. | ) |
| | ) Judge John W. Darrah |
| CITY OF AURORA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dionte Doris, brought this lawsuit against his former employer, the City of Aurora ("Aurora"), alleging two counts under the Family and Medical Leave Act of 1993 ("FMLA"), codified at 29 U.S.C. § 2601 *et seq.* Count I alleges interference with Doris's entitlements under the FMLA. Count II alleges that Aurora retaliated against Doris for asserting his FMLA rights. Both parties moved for summary judgment on both counts. On August 31, 2010, the Court entered a Memorandum Opinion and Order (the "Opinion") denying both motions for summary judgment in their entirety.

Among other things, the Court held that neither party could show the absence of a genuine issue of material fact as to whether Doris provided sufficient notice to Aurora of his intent to take FMLA leave. On October 4, 2010, Aurora filed a motion to reconsider the portion of the Opinion with respect to that issue only. For the reasons stated below, the motion is denied.

## LEGAL STANDARD

Before considering Aurora's argument, it is necessary to identify the authority for a motion for reconsideration and what standard applies to determine if such a motion should be granted. Aurora's motion is completely silent on the issue. Because a denial of a motion for summary judgment is not a final judgment, a motion to reconsider that decision does not technically fall under Federal Rule of Civil Procedure 59(e), which addresses motions to alter or amend *judgments*. *See* Fed. R. Civ. P. 59(e). Nor does it fall within the language of Rule 60(b), which provides a procedure for seeking relief from a final judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b). Nonetheless, courts in this district have characterized motions to reconsider interlocutory orders under Rule 54(b), common law, or the court's inherent authority, *see Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 WL 2966948, at *3 (N.D. Ill. Nov. 24, 2004) (compiling cases), and held that a motion to reconsider may be granted in the following circumstances:

> (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court.

*Id.* (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

Importantly, the issue presently before the Court is not whether a genuine issue of material fact exists such that Doris can avoid summary judgment on the issue of notice.

The time for argument on that issue has passed. The question now before the Court is whether the Court erred in holding that Aurora could not prevail on summary judgment based upon the motion it previously presented to the Court. "This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1998).

## ANALYSIS

The principal argument Aurora set forth in support of its motion for summary judgment (filed April 5, 2010) was that Doris could not prove he had a serious health condition. The issue as to whether Doris failed to provide sufficient notice of his condition received less attention; Aurora argued as follows:

> It is undisputed that at no time did Doris advise anyone in a position of authority at the City with respect to anything related to his health condition. He admits he did not consult the Employee Handbook or make any effort to contact the City's Human Resource Department as mandated by the policy.

Docket No. 19, at 10-11. Aurora also states that officers are required to complete Absence Reports when they call in sick and Return to Duty Reports when they miss more than two days and that Doris *did* complete such forms. *See* Docket No. 19, at 2.

Aurora then specifically argued that Doris's notification to his supervising sergeant was ineffective and that Doris did not specifically invoke the FMLA until faced with termination. In support of its argument, Aurora cited the Seventh Circuit's decision in *De la Rama v. Illinois Department of Human Services*, 541 F.3d 681, 687 (7th Cir. 2008), for the proposition that "an employee seeking to invoke FMLA protection must

3

provide notice of intent to take FMLA leave and the notice must succeed in alerting the employer to the seriousness of the health condition." Aurora also cited that case in arguing that calling in sick without more information does not provide sufficient notice and that "[t]he FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed true reason for an employee's absence." *Id.*

In the reply brief Aurora submitted in support of its motion for summary judgment, Aurora further states that Doris failed to follow the FMLA requirements set forth in the Employee Handbook. Specifically, Aurora points to language in the Handbook, providing that employees must "provide notice as soon as practicable" to assert FMLA rights and that "[t]he failure to abide by the notice requirements may result in the City denying the leave."[1] Docket No. 35, at 12-13. Aurora acknowledged that Doris provided return-to-work releases but argued that they were insufficient to provide the requisite notice. Aurora also argued that Plaintiff's conversations with his sergeant were ineffective because the sergeant was not a supervisor for employment-discrimination purposes because he did not have authority to directly affect the terms and conditions of Doris's employment. No factual support was provided for that assertion.

Thus, the facts before the Court established that Aurora had an FMLA policy set out in its Employee Handbook; that employees were required to complete certain reports

---

[1] Aurora identified the Handbook by exhibit number in its reply. No specific language was discussed in Aurora's Local Rule 56.1 Statement, which merely cited the Handbook to support statements that Doris had received a copy of it and that it contained policies for the FMLA (though the last statement actually was followed by an incorrect cite to another exhibit). *See* Docket No. 20, ¶ 5. Aurora did not make any factual assertions regarding the specific policy contained in the Handbook.

4

when they were absent; that Doris did, in fact, complete such reports; that Doris discussed the reason for his absences with multiple supervisors; and that Doris never discussed his health situation with Aurora's Human Resources Department ("HR").

Consistent with those facts, the Court found that Doris never expressly invoked the FMLA, consulted the FMLA provisions in the Handbook, or provided any information to HR about his absences, other than statements that he was "sick" and Return to Duty Reports showing he was taking antibiotics and using a nasal spray. The Court also found, however, that Doris's supervisors were aware of his condition. Notably, the Court observed that the parties did not "sufficiently address the legal question of *who* must be notified for purposes of FMLA leave." Opinion 19 n.5.

In its motion for reconsideration, Aurora now purports to answer that question by directing the Court to certain provisions in the Handbook. There are several problems with this approach. First, the argument comes late. As explained above, Aurora did not discuss any specific provisions in the Handbook in its motion for summary judgment. The mere fact that the Handbook was an exhibit to that motion does not mean that the issue was properly presented to the Court for consideration. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (citation and internal quotation marks omitted).

Second, even if the argument had been properly presented to the Court, it is not persuasive. In its motion for reconsideration, Aurora repeatedly quotes the following

statement from the Handbook, "The Human Resources Department is responsible for administration of this policy." Mot. for Reconsideration 6. Aurora also asserts that the Handbook requires employees to provide written certification from a health care provider on forms provided by HR. According to Aurora, these statements expressly and unambiguously provide that an employee must consult HR for FMLA leave. Aurora then argues that the Handbook provides potential consequences for failure to comply with these purportedly unambiguous requirements:

> In instances where it is impossible to provide the thirty day notice, i.e., unforeseen illness or injury, the City requires employees to provide notice as soon as practicable. Failure to abide by the notice requirements may result in the City denying leave.

Mot. for Reconsideration 6.

Interestingly, Aurora omits the preceding sentence, which states, "Whenever possible, an employee must provide his/her supervisor with thirty-days notice when requesting a family leave." Docket No. 43-1, at 6. Also of note, the Handbook expressly requires *managers* to notify HR about potential FMLA situations, provide HR with documentation received from employees, and keep HR informed about changes to the employee's FMLA status. Thus, it is not evident that Aurora's policies are unambiguous such that Doris undeniably failed to comply with them.

Third, Aurora's belated arguments merely address the *factual* question as to who must be notified for purposes of FMLA leave. The August 31, 2010 Opinion noted that the parties had not addressed the *legal* question as to who must be notified. As noted in the Opinion, the FMLA requires an employee to notify his *employer*. Opinion 18 (citing 29 C.F.R. § 825.303(a)). Neither party discussed who qualifies as an employer for

6

purposes of notice under the regulations (with the exception of the aforementioned, factually unsupported assertion by Aurora that Doris's sergeant did not qualify as a supervisor).

In determining that neither party had established that Doris's notice was or was not sufficient, the Court held as follows:

> The undisputed facts do show, however, that Doris had discussed his condition with multiple direct supervisors; and in the context of labor issues, the knowledge of a supervisor can be imputed to the employer. *Cf. Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) [*Cunningham*] (explaining imputed knowledge under Fair Labor Standards Act); *see also Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 725 (6th Cir. 2003) [*Cavin*] (reversing summary judgment for employer based, in part, on fact that employee had informed direct supervisor of the accident that caused him to miss work). Evidence in this case shows that Doris's absences were discussed up and down a chain of command from his supervising sergeant all the way to Chief Thomas, who ultimately recommended Doris's termination. Also, Commander Groom's email indicates that issues involving sick time should be "relayed through [the] chain of command."

Opinion 19 (footnote omitted).

In its motion for reconsideration, Aurora takes issue with the Court's reliance on both *Cunningham* and *Cavin*. *Cavin* is a Sixth Circuit case, in which an employee undisputedly violated his employer's leave policy by failing to call the Leave Coordination Department within three consecutive workdays of his first day of leave. 346 F.3d at 717. He did, however, call the security department and inform someone that he had been in a motorcycle accident and could not come to work. *Id.* at 716. The employer's policies expressly provided that employees could report one-day absences to security but had to contact the Leave Coordination Department for longer absences. *Id.*

7

Because the employee was absent for more than one day, the employer disallowed a portion of his leave under the FMLA. *Id.*

The Sixth Circuit held that the employer could not interfere with its employees' FMLA rights by enforcing notice requirements to deny benefits to which they would otherwise have been entitled under the FMLA. *Id.* at 723. In so holding, the court expressed disagreement with the Seventh Circuit's decision in *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (*Lewis*), in which the court concluded that an employer did not violate the FMLA by discharging an employee who "failed to comply with applicable company rules and policies" where it was not impossible for the employee to do so. *Id.* at 722-23.

Having determined that an employee could prevail by showing compliance with the FMLA regulations (without regard for his employer's policies), the *Cavin* court held that, for purposes of summary judgment, the employee's notice to the security department was sufficient to apprise his employer of his request to take time off for a serious health condition. *Id.* at 725. The court also drew support from *Cunningham v. Gibson Electric Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999), a decision from this district explaining that knowledge of supervisors could be imputed to the employer under the Fair Labor Standards Act. *Id.* at 725 n.8.

In arguing that this Court improperly relied on *Cavin* and *Cunningham*, Aurora incorrectly assumes that a violation of Aurora's notice procedures had been established. Had this Court made such a finding and then relied on *Cavin* to determine that Doris's notice could be sufficient notwithstanding an undisputed violation of rules that did not

conflict with the FMLA, Aurora might have a valid argument; but that is not a fair reading of this Court's summary-judgment Opinion. In its motion for summary judgment, Aurora failed to establish Doris's failure to comply with Aurora's policies or his inability to prove that he provided sufficient notice to Aurora.

Aurora also argues that the summary-judgment Opinion is at odds with the Seventh Circuit's decision in *Brown v. Automotive Components Holding Companies LLC*, 622 F.3d 685 (7th Cir. 2010) (*Brown*). That argument also is misplaced. *Brown* was decided after the Opinion was entered in this case, but it does not represent a change in the law. Notably, the case relies heavily on two other Seventh Circuit cases – *Lewis* (with which *Cavin* expressed disagreement), and *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969 (7th Cir. 2000). Both cases predate Aurora's motion for summary judgment, and neither was cited in support of that motion.

Moreover, *Brown* does not compel a finding of error in the summary-judgment Opinion. Brown, an employee of Ford Motor Company, was fired after she failed to provide proper notice to extend a previously requested leave of absence. *Id.* at 686-87. The issue as to whether her absence was qualifying FMLA leave was not before the court; the court assumed that it was. *Id.* at 687 n.1. Instead, the issue was whether Brown failed to notify Ford of her intent to extend that leave. *Id.* at 687.

Brown was subject to the leave policies in a collective-bargaining agreement. *Id.* at 687. Under the terms of that agreement, an employee seeking medical leave had to have a doctor complete a "Form 5166" and return it to the employer's medical clinic by the date leave was set to expire. *Id.* If an employee seeking an extension failed to return

that form on time, she was deemed to be AWOL (absent without official leave) and sent a five-day quit notice by registered mail. *Id.* Failure to respond to that notice within five days would result in termination. *Id.*

Brown's physician submitted a Form 5166 on August 21 and stated that Brown's return to work date was August 29. *Id.* That physician also referred Brown to a psychiatrist, who set up an appointment for August 29 – the day she was supposed to return to work. *Id.* Brown's psychiatrist diagnosed her with depression and recommended she not return to work until September 16. *Id.* at 688. It was undisputed that Brown did not attempt to notify Ford of her intent to extend her leave until August 30, when she called and spoke with a nurse at the clinic. *Id.* The employer sent Brown a quit notice dated August 31, and Ford terminated her after she failed to respond. *Id.*

The district court ultimately granted summary judgment for Ford, holding that the FMLA required Brown to provide notice within two working days of learning of the need for leave (i.e., within two days of August 21) and that she failed to do so.[2] *Id.* The court further held that the employer was "well within its rights (at least for FMLA purposes) to terminate Brown's employment according to its standard leave procedures." *Id.* at 690. The court specifically stated that the dispute over whether Brown's August 30 call to the nurse was sufficient to provide notice under the employer's leave procedures was a

---

[2] *Brown* dealt with an earlier version of the FMLA regulations. The "within no more than one or two working days" language of § 825.303(a) was removed; the section now reads as follows: "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." *See id.* at 689 n.4 (quoting 29 C.F.R. § 825.303(a)).

10

question for a labor arbitrator and did not affect its analysis of the FMLA claim. *Id.* at 690 n.5.

This case does not involve a collective-bargaining agreement; thus, there is no apparent reason why Aurora's policy cannot be interpreted by this Court. Moreover, Aurora's attempt to apply *Brown* to the case at hand again presumes that the Court resolved the issue as to whether Doris failed to comply with Aurora's leave policies. No such finding was made. Thus, the Opinion does not conflict with *Brown*'s holding that an employer may terminate an employee according to its standard leave procedures, and *Brown* does not provide a reason to change the ruling set forth in the Opinion.

Doris will have the ultimate burden at trial to show that he provided sufficient notice of his intent to take leave, and a reasonable jury certainly could determine that Doris's conversations with his supervising officers fell short of providing sufficient notice to his employer under the FMLA and the policies set forth in Aurora's Handbook. In order to prevail at the summary-judgment stage, however, Aurora had to demonstrate that Doris could not prove that element of his case as a matter of law. As set forth in the Opinion, Aurora failed to do so. Nothing presented in Aurora's motion for reconsideration indicates that decision was incorrect.

As a final matter, the Court must address an issue raised in Doris's response to Aurora's motion for reconsideration. With little explanation and no identification of authority for its position, Doris states as follows: "[B]ecause Defendant has again brought the issue of summary judgment before this Court, and because the new caselaw on which Defendant bases its Motion to Reconsider only further buttresses existing

Seventh Circuit precedent which entitles Mr. Dorris [*sic*] to summary judgment, Mr. Doris respectfully requests that this Court enter summary judgment in his favor." Pl. Resp. to Mot. to Reconsider 1. The request is without merit. Doris did not purport to identify any error in the Opinion or any other reason that would warrant reconsideration. Accordingly, this unfounded and unsupported request is denied.

## CONCLUSION

For the reasons stated above, Aurora's Motion to Reconsider is denied. To the extent Doris was attempting to make his own motion to reconsider, that motion is denied as well.

Date: *December 14, 2010*

_____
JOHN W. DARRAH
United States District Court Judge